UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
**F I L E D**

JUL 2 6 2006

AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-457-GWU

ROGER CAUSEY,                                                                  PLAINTIFF,

VS.                           **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                          DEFENDANT.

**INTRODUCTION**

The plaintiff brought this action to obtain judicial review of an administrative denial of his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

**APPLICABLE LAW**

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to

1

        Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

        Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial

Causey

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

3

Causey

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

Causey

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

5

Causey

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

6

may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Roger Causey, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of traumatic blindness in the right eye (status post cataract surgery), hypertension, alcoholism "in remission by history," "dysthymia, rule out substance-induced mood disorder," "generalized anxiety disorder, rule out substance induced mood disorder," and a post concussion syndrome. (Tr. 19). Nevertheless, the ALJ determined that the plaintiff retained the residual functional capacity to perform a significant number of jobs existing in the economy and, therefore, was not entitled to benefits. (Tr. 21-4). The Appeals Council declined to review, and this action followed.

The plaintiff had filed a prior application for benefits, which was denied in a decision by an ALJ on May 30, 2002 (Tr. 38-46) and subsequently affirmed on appeal to this Court in a Memorandum Opinion and Order of August 29, 2003 (Tr. 55-70). The plaintiff's current applications for benefits alleged an onset date of May

7

31, 2002. (Tr. 89, 346). The ALJ in the present application found that there had been no evidence of a change in Mr. Causey's condition since the prior final decision, and concluded that he had the same residual functional capacity as in the prior decision. Specifically, he found Mr. Causey capable of "medium" level exertion, with no climbing, balancing, working at heights or around industrial hazards, no work requiring binocular vision, and only "low stress" work, defined as work with no frequent changes in work routines, no fast-paced assembly lines, no requirement for problem-solving or independent planning, and only occasional interaction with the general public, co-workers, or supervisors. (Tr. 21). Although Mr. Causey could not return to his past relevant work as the owner/operator of a motel and bar and cook/cleaner/general laborer, the ALJ relied on the testimony of a vocational expert in the prior case that there were jobs that the plaintiff could perform with these restrictions. (Tr. 22).

On appeal, this Court must determine whether the administrative decision is supported by substantial evidence. The plaintiff's Date Last Insured (DLI) was September 30, 2002, meaning that he was required to show disability existing prior to that date in order to be entitled to DIB. His SSI application is not affected.

Mr. Causey underwent a consultative psychological evaluation by I.T. Baldwin on August 27, 2003, at which he alleged a nervous condition and described having many concussions from car wrecks, most recently in 2002. (Tr. 165-6). Mr. Causey

8

alleged having bad nerves for 20 years or more, and was on medication including Celexa, without which he became very depressed. (Tr. 166). He admitted to being a fairly heavy drinker in the past, but not since 1997, although he had a DUI in April, 2002 "for taking his own medicine." (Tr. 167). One of his medications was Xanax, which he took for panic attacks. (Id.). Mr. Baldwin described the plaintiff's appearance as being nervous, fidgety, very ill at ease, worried, with a high anxiety level, nervous laughter, and an appearance of being about to cry several times. (Tr. 168). His affect was "inappropriate" and he appeared to have "private jokes and thoughts going on in his head." (Id.). IQ testing showed a verbal score of 86, a performance score of 60, and a full-scale score of 72, which Baldwin described as showing an obvious deterioration from a previously higher level of functioning. He also indicated that the 26 point difference between verbal and performance scores was consistent with "some form of dementia." (Id.). The Bender Motor Gestalt tests was positive for organicity, and other drawings were also "grossly distorted." (Tr. 168-169). In summary, Mr. Baldwin commented that although it was "possible his symptoms are due to medication or some acute reaction, the overall picture suggests this is a progressive disorder of some sort," and recommended "a neurological evaluation to determine the nature and extent of the problem." (Id.). His diagnostic impression was of dementia, a cognitive disorder, an anxiety disorder due to medical condition, an unspecified mental disorder, "rule out" adverse effects

9

Causey

of medication, "rule out" other or unknown substance-related disorder, and "mild mental retardation in psychomotor areas." (Tr. 169-70). In terms of functional restrictions, the psychologist opined that Mr. Causey was not capable of dealing with work-related activities, or relating to co-workers and supervisors, and felt that he would not be able to sustain attention to perform work-related tasks, in addition to having exceptional difficulty attempting to learn new information or skills. (Tr. 169).

A state agency psychologist, Dr. James Ross, reviewed the evidence as of September 24, 2003, and opined that Mr. Causey would have only a "moderately limited" ability to understand, remember, and carry out detailed instructions, interact appropriately with the general public, and perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. (Tr. 198-9). Although not entirely clear, Dr. Ross appeared to explain his decision by indicating that the plaintiff's past history of drug and alcohol abuse "in the context of the ALJ rationale, affirmed on Appeal, affirmed at District Level," created evidence of a "credibility compromise" and that he would give Mr. Baldwin's findings and opinion only partial weight. (Tr. 200). Another state agency source, Dr. Steven Sher, affirmed Dr. Ross without any additional comment. (Tr. 276-8).

The ALJ agreed with the opinion of Dr. Ross and gave Mr. Baldwin's assessment that the plaintiff was not capable of dealing with work-related activities or relating to supervisors and co-workers only "partial" weight. (Tr.. 18).

10

Causey

While the opinion of a non-examining source may be accepted over that of an examiner, the non-examiner must had the benefit of a review of the entire record and clearly stated the reasons that his opinion differed from the examiner. Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994). In the present case, Dr. Ross cited only a "credibility compromise" that, presumably, may not have been known to the examiner, but other than a history of substance abuse which the plaintiff admitted to the psychologist, it is not clear to what he referred. Mr. Baldwin did not suggest that Mr. Causey was malingering or otherwise giving inadequate effort on testing. While he did state that it was possible that the symptoms he observed were due to medication, Dr. Ross did not give this as a reason for discounting Baldwin's conclusions.

No other treating or examining source discussed mental restrictions. The ALJ cited a number of subsequent records, including treatment notes from the Kentucky River Community Care outpatient mental health clinic (KRCC), where the plaintiff had been diagnosed with major depression and alcohol dependence in full sustained remission in July, 2001, and prescribed the medications Celexa and Zyprexa. (Tr. 250-1). At that time, the staff psychiatrist assigned a Global Assessment of Functioning (GAF) score of 61-70, reflecting only "mild" symptoms per the Diagnostic and Statistical Manual of Mental Disorders (Fourth Edition-Text Revision) (DSM-IV-TR), p. 34. Subsequently, the plaintiff reported having a severe concussion and

11

Causey

damage to his right eye in a motor vehicle accident (Tr. 248), and, although later counseling notes appear to indicate that he was doing fairly well, and that his medication was helping, no GAF or other indication of his level of functioning was given. (Tr. 239-47).[1] The plaintiff's treating family physician, Dr. James Chaney, consistently indicated an anxious affect and mood and was prescribing Celexa and Xanax. (Tr. 203-19). Mr. Causey described the medication as being helpful. (Id.). Finally, Mr. Causey was involuntarily admitted to the Appalachian Regional Hospital's psychiatric unit for 72 hours in October, 2004 after a motor vehicle accident where he was "apparently under the influence," according to Dr. Chaney. (Tr. 330). The reason given was "substance-induced mood disorder" and polysubstance dependence, along with "rule out GIAD with depression." (Tr. 330, 339). His GAF was given as 30 on admission, indicating serious impairment in communication or judgment. (Tr. 339). The notes from this admission are jumbled and apparently incomplete, and there is no discharge summary. Dr. Chaney indicated that it was intended to get a further workup for polysubstance dependence and substance-induced mood disorder (Tr. 327), but no such testing appears in the Court transcript, although CT scans of the head and of the cervical spine were obtained and read as

---

[1] Hospitalization records show that the plaintiff was admitted for a motor vehicle accident and diagnosed with a concussion with positive loss of consciousness in September, 2003. (Tr. 172). He eventually required an operation on his right eye for a "traumatic cataract" and secondary glaucoma. (Tr. 284-7).

12

Causey

essentially negative. (Tr. 342-3). It was also noted that the plaintiff was admitted to the psychiatric unit after the motor vehicle accident because he said if he "didn't care if he killed himself," and was not being truthful about having no history of substance abuse. He asserted that he was using Xanax as prescribed, although he admitted to "abusing" the over-the-counter medication Excedrin. (Tr. 331, 335). Mr. Causey testified at the administrative hearing that he was hospitalized because he was thought to be suicidal, although he was not, and that he was only taking 6-8 Excedrin a day for headaches, which was termed "abuse." (Tr. 374-6). However, Dr. Chaney did state in his admission note that the plaintiff would drink "occasionally," a factor cited by the ALJ presumably in reference to credibility. (Tr. 326).

While there is a possible indication of continuing substance abuse based on this incident, albeit unconfirmed by objective testing, the Court is troubled by the fact that Baldwin's findings regarding dementia and a cognitive disorder were not really addressed by any other source, including the state agency reviewers. Baldwin's findings, uncontradicted by any examining source, would render the plaintiff disabled, unless they were negated by medication side effects or deliberate malingering. The reviewers did not indicate that medication side effects, or side effects of other substances, was the reason for discounting Baldwin's opinion, however, and explicitly found the plaintiff not credible based solely on a previous denial decision. Given the seriousness of Baldwin's findings, and his lack of any

13

Causey

indication of malingering, additional neurological and/or psychiatric testing should have been obtained if his opinion was to be rejected. Since Baldwin's testing did not occur until almost a year after the DLI, however, substantial evidence supports a conclusion that the plaintiff did not establish a disability prior to that date. A remand will be required in order to consider his application for SSI only.

The decision will be affirmed in part and remanded in part for further consideration.

This the ___26___ day of July, 2006.

*signature*

G. WIX UNTHANK
SENIOR JUDGE